# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**June 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER N.,**
**Petitioner Below, Petitioner**

**v.)  No. 24-ICA-389**    (Fam. Ct. Raleigh Cnty. Case No. FC-41-2022-D-536)

**CARLA N.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Christopher N. ("Husband")[1] appeals the Family Court of Raleigh County's September 3, 2024, final divorce order that distributed the parties' property and awarded spousal support to Respondent Carla N. ("Wife") in the amount of $400 per month for ten years.[2] Wife filed a response in support of the family court's order. Husband did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in April of 2004 and separated in December of 2020. After approximately sixteen years of marriage, Husband filed a petition for divorce on November 4, 2022. He filed his financial statement, listing six items of property, and stated that his income was $5,631 a month. He disclosed one debt, which was the marital home in the amount of $39,000.

On February 23, 2023, Wife filed her financial documentation and supporting documents. Wife listed more than twenty items of property and stated that her gross

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Husband is represented by Nelson M. Michael, Esq. Wife is represented by Brandon L. Gray, Esq.

1

monthly income was $2,917.56. On May 17, 2023, and on August 4, 2023, Wife filed updated monthly income information and complied with discovery requests.[3] Husband briefly had attorney representation, but thereafter opted to represent himself.

On September 14, 2023, Wife filed a set of interrogatories that Husband did not answer. On October 27, 2023, Wife's counsel sent a letter to Husband requesting that he comply with discovery. The case was set for a final divorce hearing for December 18, 2023. Husband moved to continue the final hearing, which was denied by the family court. Regardless, Husband failed to appear at the December 18, 2023, final hearing and thus, the court rescheduled the matter. On January 5, 2024, the court entered an order finding that Husband requested a continuance of the December 18, 2023, final hearing, and despite his motion being denied, he failed to appear for the hearing. Additionally, the court found that Husband failed to comply with discovery requests, and that the court would entertain a motion for attorney fees at a later date. On December 19, 2023, a Notice of Final Hearing was filed and mailed to Husband, informing him that the final divorce hearing was rescheduled to February 26, 2024.

After hearing no response from Husband regarding the discovery requests, Wife filed a motion to compel discovery. On February 26, 2024, the day of the final hearing, Husband again failed to appear after the court waited for nearly forty minutes. By order entered April 8, 2024, the family court noted Husband's failure to appear at two consecutive hearings and found that Husband had a duty to provide the court with enough information to equitably divide the parties' estate, that Husband failed to provide such information, and that his failure to comply and participate in the matter had increased Wife's attorney fees. As a result, the court ordered Husband to pay $750 in attorney fees, to begin paying the mortgage on the marital residence starting on March 1, 2024, to pay the parties' consolidated credit card debt payment, and not to sell or transfer any marital assets. Wife's motion to compel discovery was also granted and the final hearing was rescheduled to April 22, 2024, by Notice of Final Hearing filed and mailed to Husband on February 27, 2024.

By Notice of Rescheduled Final Hearing mailed on April 15, 2024, the family court notified Husband that the final hearing was rescheduled to June 14, 2024, due to a scheduling conflict with Wife's attorney. On June 4, 2024, Wife filed a motion for contempt, asserting that Husband had yet to comply with the family court's previous orders. Copies of all filed pleadings, notices, and orders had been mailed to Husband at his post office box, which was the mailing address he supplied to the family court.

---

[3] Wife's updated financial disclosure reported a variable income of between approximately $900 and $3,100 per month working as a substitute teacher.

On June 14, 2024, the family court held the final divorce hearing. For the third time, Husband failed to appear, despite the court finding that he had received adequate notice of the hearing. After waiting on Husband to appear for approximately twenty minutes, the court proceeded with the final hearing in his absence. During the hearing, the court heard Wife's unrebutted testimony regarding, among other things, the parties' assets and debts.

On August 30, 2024, Wife's counsel mailed a copy of the proposed Final Order to Husband pursuant to Rule 22(b) of the Rules of Practice and Procedure for Family Court, providing Husband with five days to submit written objections to the drafted order. After receiving no objections, the family court entered the Final Order from the June 14, 2024, final hearing on September 3, 2024, which ordered, among other things, the following: Husband was to reimburse Wife for $11,133 which he removed from an account containing funds inherited by Wife, held specifically for the parties' minor daughter; Husband was to return a .22 caliber gun that was Wife's separate property; Husband was to pay Wife spousal support in the amount of $400 per month for her to obtain healthcare; Wife was given the exclusive use of the marital home; Wife received half the value of the secondary residence; Wife received ownership of two of the twelve property lots which she had paid taxes on; Husband was to reimburse and pay Wife's attorney fees and costs; and Wife received half of Husband's pension and retirement from the date of marriage to separation. Husband was also ordered to take over the payments on the marital home and the consolidated debt payments which he had been ordered to start paying by order on March 1, 2024, and had failed to comply with. It is from this order that Husband now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Husband argues three assignments of error on appeal, which we will address in turn. First, Husband contends that he did not receive actual notice of the final divorce hearing due to unreliable postal service. We are unpersuaded by this argument. "It is a well-established principle of law that a letter properly addressed, stamped[,] and mailed is presumed to have been duly delivered to the addressee." *Dunn v. Watson*, 211 W. Va. 418, 421, 566 S.E.2d 305, 308 (2002). The notice of the June 14, 2024, final hearing was mailed to Husband on April 15, 2024, at the address he supplied on file with the court. Husband

3

offers no evidence that he did not receive adequate notice of the hearing, aside from his assumption that the postal service was to blame. Conversely, the record demonstrates that the family court continued the final hearing multiple times because of Husband's incessant absence and failure to participate in discovery. As such, we cannot find that the family court abused its discretion by proceeding with the final hearing.

For his second assignment of error, Husband argues that the family court abused its discretion as to the characterization and distribution of the parties' separate and marital property. In support of his argument, Husband first asserts that the family court failed to classify the parties' property as marital or nonmarital. He then contends that the court subsequently abused its discretion by failing to divide the following property equitably: 1) the bank account containing money reserved for the parties' minor daughter; 2) the marital home; 3) the secondary residence; 4) the parties' consolidated debt and joint tax debt; and 5) Husband's pension and retirement.[4] For the reasons discussed below, we affirm the family court's equitable distribution of the parties' property.

West Virginia Code § 48-7-201 (2001) requires that in a divorce action "all parties shall fully disclose their assets and liabilities" and that such information "shall be updated on the record to the date of the hearing." West Virginia Code § 48-7-206 (2001) provides that "[a]ny failure to timely or accurately disclose financial information" gives the court the discretion to "accept the statement of the other party as accurate." *See also* Rule 13 of the Rules of Practice and Procedure for Family Court; *see also Brown v. Brown*, No. 11-1705, 2013 WL 149600, at *2 (W. Va. Jan. 14, 2013) (memorandum decision) (Because ex-husband failed to disclose debt, namely a credit card cash advance, in the course of the divorce proceedings, there was no error in trial court's decision to hold him liable for it.)

The only property Husband disclosed in his petition for divorce was the marital home, two vehicles, guns, and tools. The only debt he listed was the marital home. Whereas Wife's financial statement listed the marital home, twelve additional property lots, four vehicles, two checking accounts, two savings accounts, stock values, pensions, retirements, life insurance, guns, tools, and jewelry. She also produced additional financial documentation and testimony to support her claims.

The Supreme Court of Appeals of West Virginia ("SCAWV") has long held that "judgment will not be reversed for an error introduced into the record or invited by the party seeking reversal. The party who caused the irregularity or committed the error should not be advantaged on appeal by that same irregularity or error." *Young v. Young*, 194 W. Va. 405, 409, 460 S.E.2d 651, 655 (1995). In *Young*, the SCAWV explained that "[p]art of our refusal to allow a party to profit from an error he invited is based on the need for judicial

---

[4] Husband also argues that the court erred by ordering him to return Wife's firearm, an item he claims he does not possess.

economy. The party who invites the error should not have a second 'bite of the apple.'" *Id.* at 410, 460 S.E.2d at 656; *see also Jeffrey S. v. Jennifer S.*, Nos. 11-1453, 12-0200, 2013 WL 310054 (W. Va. Jan. 25, 2013) (memorandum decision) (affirming the trial court ruling to proceed without the husband at the hearing and the final decision to deny the husband any parenting time).

In the case at bar, the record reflects that Husband failed to submit pleadings, failed to attend hearings, failed to comply with court ordered discovery requests, and failed to file any updated financial documentation, which left Wife's evidence unrebutted; further, he only disclosed *one* of the *five* items of property he argues on appeal, namely, the marital home. His brief to this Court primarily consists of rebuttals and statements alleging why the family court's findings and rulings were erroneous – errors he invited by his failure to appear or participate.

As the SCAWV has stated:

[W]ith regard to the family court's factual findings that underlie its equitable distribution order, this Court will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous[.] A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the [family] court's account of the evidence is plausible in light of the record viewed in its entirety. It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations. Even where testimony is uncontroverted, a fact-finder is free to disregard such testimony if it finds the evidence self-serving, and not credible.

*Mulugeta v. Misailidis*, 239 W. Va. 404, 408-09, 801 S.E.2d 282, 286–87 (2017) (citations and quotations omitted). Here, Husband is not entitled to a second bite of the apple after he, with proper notice of the hearings and previous orders requiring him to participate in discovery, chose not to partake. Upon a review of the hearing, we find no justification for abandoning the SCAWV's longstanding policy of not reversing an error invited by the party seeking relief and conclude that the family court neither abused its discretion nor erred in its rulings with respect to Wife's unrebutted evidence or its ultimate equitable distribution of the parties' property.

As his last assignment of error, Husband argues that the family court abused its discretion when it ordered him to pay spousal support and Wife's attorney fees. Husband contends that the court failed to consider that Wife was eligible for health insurance

through her employer when it awarded spousal support and failed to consider that Husband did not receive actual notice of any hearings, including the contempt hearings, when it ordered him to pay Wife's attorney fees. We disagree.

Regarding spousal support, the SCAWV has long held that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). Husband's sole argument is that since the court failed to verify whether Wife was eligible for health insurance through her employer, the award of spousal support was erroneous. However, a review of the record demonstrates that Wife submitted evidence to the family court that she was not eligible to receive health insurance because she was a short-term substitute teacher rather than a full-time employee with eligibility. Husband's argument also was not raised before the family court.[5]

The SCAWV has established that

"Our general rule is that nonjurisdictional questions ... raised for the first time on appeal, will not be considered." *Shaffer v. Acme Limestone Co., Inc.,* 206 W. Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999). *See also, Whitlow v. Board of Education,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal."); *Konchesky v. S.J. Groves & Sons Co., Inc.,* 148 W. Va. 411, 414, 135 S.E.2d 299, 302 (1964) ("[I]t has always been necessary for a party to object or except in some manner to the ruling of a trial court, in order to give said court an opportunity to rule on such objection before this Court will consider such matter on appeal.").

*Noble v. W. Virginia Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Here, Husband's argument was raised for the first time on appeal. As such, we decline to consider the same.

Regarding attorney fees, West Virginia Code §§ 48-1-305(a)-(b) (2001) states, in part, "[c]osts may be awarded to either party as justice requires . . . ." and "[t]he court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action." Further, an award of attorney fees falls within the sound discretion of the family court and should not be disturbed on appeal absent

---

[5] Husband's brief fails to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure in that his brief does not "includ[e] citations that pinpoint when and how the issues in the assignments of error were presented to the lower [court]."

an abuse of discretion. *P.A. v. T.A.*, 238 W. Va. 216, 793 S.E.2d 866 (2016); *Arneault v. Arneault*, 216 W. Va. 215, 605 S.E.2d 590 (2004). With this deferential standard in mind, we affirm the family court's award of attorney fees to Wife. The SCAWV has held that a family court should consider the following when determining whether attorney's fees are appropriate:

> [T]he party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

*Banker v. Banker*, 196 W. Va. 535, 550-551, 474 S.E.2d 465, 480-481 (1996).

Here, Husband earns considerably more than Wife monthly, and counsel for Wife had no choice but to file discovery and contempt motions due to Husband's unwillingness to cooperate in the proceedings below. During the final hearing, the family court noted, aside from Husband's motion to continue the December 18, 2023, final hearing, that Husband had failed to participate in the divorce proceedings for almost a year. The SCAWV has recognized that delay caused by a party may be considered as a relevant factor in awarding attorney fees. *See Landis v. Landis*, 223 W. Va. 325, 328, 674 S.E.2d 186, 189 (2007). Husband's disassociation from the proceedings hindered the family court's judicial efficiency. It is clear that Wife's attorney obtained a beneficial result as Wife's pleadings, exhibits, and testimony went unrebutted. Given the history of Husband's lack of participation and failure to appear for hearings, which delayed the matter, we conclude that the family court did not abuse its discretion by awarding attorney fees to Wife.

Accordingly, we affirm the Family Court of Raleigh County's September 3, 2024, final divorce order.

Affirmed.

**ISSUED:** June 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

7